UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>            vs.<br><br>KEVIN CARNEY,<br><br>                    Defendant. | CR. 17-50127-JLV<br><br><br>ORDER |

## INTRODUCTION

Defendant Kevin Carney, appearing *pro se*, filed a motion for compassionate release.  (Docket 71).  Pursuant to Standing Order 32-02, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Carney's motion.  (Docket 73).  For the reasons stated below, defendant's motion is denied.

## STANDING ORDER 23-02

Standing Order 23-02,[1] captioned "Revising the Procedure for Compassionate Release Motions Under the First Step Act," "revis[ed] the procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)."  (SO 32-02).  Under the

---

[1]See https://www.sdd.uscourts.gov/content/standing-order-23-02-revising-procedure-compassionate-release-motions-under-first-step-act ("SO 32-02").

order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act.  If the FPD believes itself to have a conflict of interest or other inability to represent a person who qualifies under (a) and (b) above, the FPD shall notify the magistrate judge in the division where the case is pending so that the magistrate judge may consider the appointment of a CJA panel attorney."  Id. at ¶ 1.

## FACTUAL BACKGROUND

On March 22, 2019, Mr. Carney pled guilty to attempted receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A).  (Docket 57).  Mr. Carney was sentenced to a term of imprisonment of 96 months and five years supervised release.  (Docket 68).  According to Mr. Carney's presentence report ("PSR"), "[b]ased upon a total offense level of 19 and a criminal history category of I, the guideline imprisonment range is 30 months to 37 months.  However, the statutorily required minimum sentence of 5 years is greater than the maximum of the applicable guideline range; therefore, the guideline term of imprisonment is 60 months.  USSG §5G1.1(b)."  (Docket 63 at ¶ 54).  The statutory term of imprisonment is between 5 and 20 years.  Id. at ¶ 53.  The court, accepting the parties' joint recommendation in the plea agreement, departed above the guidelines range, sentencing Mr. Carney to 96 months imprisonment.  (Docket 68 at p. 2; Docket 68-1 at p. 3).

Mr. Carney is currently an inmate at FCI Danbury, a low security federal correctional institution, located in Danbury, Connecticut.  <u>See</u> Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/mobile/find_inmate /byname.jsp#inmate_results (last checked Apr. 27, 2023).  Mr. Carney has a scheduled release date of January 2, 2026.  <u>Id.</u>

<b>MR. CARNEY'S CLASSIFICATION</b>

On November 14, 2022, the FPD and the U.S. Attorney filed a notice of categorization of compassionate release motion.  (Docket 72).  They jointly "agree that this case should be categorized as a Low Priority case."  <u>Id.</u>

<b>ANALYSIS</b>

**A. <u>Legal Standard</u>**

Because sentences are final judgments, a "court may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  In 2018, Congress passed the First Step Act ("FSA"), which amended 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release.

Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early.  18 U.S.C. § 3582(c)(1)(A)(i).  Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and "the defendant is not a danger to the safety of any

3

other person or to the community, as provided in 18 U.S.C. § 3142(g)."
U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018).  The inmate bears the
burden to establish that compassionate release is warranted.  United States v.
Jones, 836 F.3d 896, 899 (8th Cir. 2016).  The district court is not required to
investigate possible avenues for relief or to develop the record in support of a
motion.  United States v. Banderas, 39 F.4th 1059 (8th Cir. 2022).

       Congress did not define what constitutes "extraordinary and compelling."
28 U.S.C. § 994(t).  Rather, the Sentencing Commission was directed to
promulgate "the criteria to be applied and a list of specific" extraordinary and
compelling examples.  Id.  Prior to Congress passing the FSA, the Sentencing
Commission limited "extraordinary and compelling reasons" to four scenarios
which are the consideration of the defendant's (1) terminal illness,
(2) debilitating physical or mental health condition, (3) advanced age and
deteriorating health in combination with the amount of time served and
(4) compelling family circumstances.  Id.  Additionally, there is a fifth catch-all
category for an "extraordinary and compelling reason other than, or in
combination with, the reasons described" as determined by the Director of the
Bureau of Prisons.  U.S.S.G. § 1B1.13 cmt. n.1(D).  These categories have not
been updated since December 2018 when FSA became law.[2]

---

    [2]Until recently the United States Sentencing Commission lacked a
quorum, and the newly established commission has not amended the United
States Sentencing Guidelines.

As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies.  See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act").  The purpose of the First Step Act is to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.  It is clear Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission.  See 18 U.S.C. § 3582(c)(1)(A).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Mr. Carney's request for compassionate release was made to FCI Danbury's Warden on August 8, 2022.  (Docket 71-1 at p. 1).  In that request, Mr. Carney stated, he is "seeking compassionate release/reduction in sentence due to [his] mothers financial difficulty and decreased capacity to care for [his] ten year old son."  Id.  Mr. Carney exhausted his administrative remedies.

## B. **Defendant's Motion for Compassionate Release**

Mr. Carney argues, "[s]everal factors including familial necessity, guaranteed employment and emotenal [sic] and intellectual growth support this request." (Docket 71 at p. 1).

While not dispositive, family circumstances are a consideration contemplated by U.S.S.G. § 1B1.13, Application Note 1(C), which addresses compassionate release when "[t]he death or incapacitation of the caregiver of the defendant's minor child" has occurred or the defendant's spouse has become incapacitated and "the defendant would be the only available caregiver." See United States v. Croud, No. CR 18-116, 2022 WL 17584413, at *2 (D. Minn. Dec. 12, 2022) (while "not dispositive," the court may consider U.S.S.G. § 1B1.13 in determining if extraordinary and compelling circumstances exist).

Mr. Carney states he has full custody of his son and since his incarceration, his son, A.C., has been in his mother's care. (Docket 71 at p. 1). Mr. Carney states his mother's care of A.C. has "created an unbearable social, emotional and financial burden." Id. If released, he plans on residing in Colchester, Connecticut, at his mother's house with her and A.C. Id. at p. 3. He plans to work at Perfection Centerless Grinding.[3] Id. Mr. Carney's PSR states, he "has been [A.C.]'s primary caregiver since [A.C.] was 6 months-of-age. He stated they are inseparable, and [A.C.] is '[his] whole world.' [A.C.] has

---

[3]Warren Fritz, owner of Perfection Centerless Grinding Company, sent a letter stating he would provide full-time employment to Mr. Carney. (Docket 71-2 at p. 2).

special needs and receives individualized education programing (IEP) services in school; however, his diagnosis is unknown.  Since his incarceration, [A.C.] has lived with the defendant's mother and sister.  Following his release from custody, the defendant intends to reside in Portland, CT, with [A.C.]."  (Docket 63 at ¶ 36).  Mr. Carney does not claim that his child's primary caregiver, namely his mother, is deceased or incapacitated.

Mr. Carney's mother, Janice Rondinone, submitted a letter to the court, stating she is asking for home confinement due to her having "to work part time to make ends meet and to continue caring for Kevin[']s 10 year old son. Kevin[']s incarceration has put a financial strain on me as I no longer have his income to help with expenses.  Prior to Kevin[']s incarceration he was a tremendous financial support."  (Docket 71-2 at p. 1).  Additionally, she states she does not have the best physical health, due to her age and past cancer and blood pressure issues, which makes continuing to work to be very difficult.  Id. Although a financial strain, there is no evidence Ms. Rondinone cannot continue as A.C.'s caretaker.

Mr. Carney states A.C.'s mother and himself "are friends, she is supportive, and they speak daily."  (Docket 63 at ¶ 36).  There is no evidence that A.C.'s mother cannot be A.C.'s caretaker.

While Mr. Carney's desire to be of assistance to his family is admirable, that desire does not justify compassionate release.  See United States v. Francisco-Ovalle, No. 18-CR-526, 2021 WL 123366, at *3 (S.D.N.Y. Jan. 13, 2021) ("Defendant's desire to provide financial support for his family . . .

applies broadly to incarcerated persons and does not in itself provide extraordinary and compelling reasons justifying release.").

Next, Mr. Carney argues he is entitled to compassionate release due to his emotional and intellectual growth.  (Docket 71 at p. 1).  Because the FSA changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." United States v. Hodgin, No. 4:15-CR-40110-02, 2021 WL 928179, at *3 (D.S.D. Mar. 11, 2021) (quoting United States v. Condon, 458 F. Supp. 3d 1114, 1118 (D.N.D. 2020)).  Although the court is allowed to determine if a situation fits under the catch all exception, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" to justify compassionate release.  United States v. Brown, 457 F. Supp. 3d 691, 701 (S.D. Iowa 2020) (quoting 28 U.S.C. § 994(t)).  "For the word 'alone' to do any work—as it must—that means courts can consider rehabilitation as part of a compassionate release motion."  Id.; see also United States v. Contreras, 504 F. Supp. 3d 1052, 1060 (D.S.D. 2020) (The Sentencing Commission recognizes that rehabilitation cannot be the sole factor for compassionate release.).

The court already explained why Mr. Carney is not entitled a reduction in sentence due to his family situation, leading to the sole remaining grounds for a sentence reduction to be his rehabilitation.  Because rehabilitation alone cannot justify a reduction, Mr. Carney's motion must be denied.

**C. 3553(a) Factors**

The 3553(a) sentencing factors further show that compassionate release

is not warranted.  These factors include:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed—

   a. to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;

   b. to afford adequate deterrence to criminal conduct;

   c. to protect the public from further crimes of the defendant; and

   d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

Mr. Carney's PSR details the nature and circumstances of the offense.

(Docket 63 at ¶ 5).  During the 2017 Sturgis Bike Rally, law enforcement set up

an operation to target online predators.  Id.  As part of the operation, agents

created multiple personas on online websites and mobile applications.  Id.

On August 6, 2017, Mr. Carney exchanged over 100 messages on

Whisper with an undercover "profile" that posed as a 13-year-old girl.  Id. at

¶ 7.  During the conversation, the defendant agreed to assist the persona in

running away from home, with a plan to take the persona to his home in

Connecticut.  Id.  The persona and Mr. Carney discussed showering and

sleeping naked together.  Id.  Mr. Carney asked, "If things lead to more than a

friendship would you be opposed?  Being we will be sleeping in the same bed

9

and showering together it's bound to happen." Id.  Mr. Carney requested photos of the persona; he sent non-explicit photos of himself.  Id.  The persona stated she was going to shower, Mr. Carney replied, "I want to see."  Id.

On August 8, 2017, Mr. Carney responded to another undercover's persona of a 15-year-old girl on Whisper.  Id. at ¶ 8.  During the conversation Mr. Carney requested a topless photo of the persona and sent the persona a non-explicit photo of himself.  Mr. Carney "said he wanted to have sexual intercourse with [the persona] and stated, 'You want it deep inside, I'll do that too,' and 'I'll use a condom.'  [Mr. Carney] indicated he wanted to have oral sex by stating, 'I can lick you really good,' and 'You can give me a bj.' "  The persona indicated she had a 15-year-old cousin.  Id.  Mr. Carney discussed having sexual relations with the persona and the cousin, stating, "I'm sure I can keep you both happy at the same time," and "If I'm in you she can stand over you and bend over so I can eat her out."  Id.  On August 10, 2017, Mr. Carney and the persona arranged to meet at the First Presbyterian Church in Sturgis.  Id. at ¶ 9.  On August 11, 2017, Mr. Carney arrived at the church and was arrested.  Id.  Law enforcement seized a Samsung S8+ cell phone from his person; a forensic examination was completed, and no child pornography-related contraband was found.  Id. at ¶¶ 9-11.  This conduct is highly concerning.

Mr. Carney has minimal criminal history, consisting of one conviction for public disturbance in 2017.  (Docket 63 at ¶ 29).  Mr. Carney has no disciplinary record at FCI Danbury.  (Docket 73 at p. 153).

The court concludes Mr. Carney's sentence of 96 months continues to be appropriate for the seriousness of the crime he committed.

## ORDER

Based upon the above analysis it is

ORDERED that defendant's motion for compassionate release (Docket 71) is denied.

Dated May 30, 2023.

BY THE COURT:

/s/ *Jeffrey L. Viken*
_____
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE